UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIARA DORSET,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.,<br><br>                Defendants. | Civil Action No. 23-21749 (JXN)(JRA)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant United Healthcare Services, Inc. ("Defendant")'s renewed motion to compel arbitration and stay Plaintiff Kiara Dorset's ("Plaintiff") claims. (ECF No. 41). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332(a) and 1441(b), respectively. The Court has carefully considered the parties' submissions and decides this matter with oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion to compel arbitration (ECF No. 41) is **GRANTED**, and the action is **STAYED** pending the arbitration's outcome.

**I.   BACKGROUND**

**A.   Procedural History**

This case arises out of Defendant's allegedly discriminatory and wrongful termination of Plaintiff's employment as a remote Customer Service Advocate. (*See generally* Complaint ("Compl."), ECF No. 1-1).

On or about September 25, 2023, Plaintiff filed a Complaint against Defendant in the Superior Court of New Jersey, Law Division, Union County. (*Id.*). The Complaint asserts two

causes of action: Pregnancy Discrimination/Failure to Accommodate (Count I) and Retaliation (Count II) in violation of the New Jersey Law Against Discrimination ("NJLAD"), as amended by the Pregnant Workers Fairness Act, N.J.S.A. 10:5-1, *et seq.* (*Id.* at ¶¶ 19-32). Defendant then removed to this Court. (ECF No. 1).

On November 5, 2023, Defendant moved to compel arbitration and stay proceedings pending arbitration pursuant to the Employment Arbitration Policy ("Arbitration Agreement") entered into between the parties. (ECF No. 5). On July 12, 2024, the Court denied the motion to compel without prejudice, ordered the parties to conduct limited discovery on the issue of arbitrability, and permitted Defendant to file a renewed motion, which would be assessed under the summary judgment standard, pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 13-14).

On February 10, 2025, Defendant renewed its motion to compel arbitration and stay the proceedings. ("Def.'s Br.") (ECF No. 41). On February 24, 2025, Plaintiff opposed. ("Pl.'s Br.") (ECF No. 42). On March 10, 2025, Defendant replied. ("Def.'s Rep. Br.") (ECF No. 43). This motion is now ripe for consideration.

### B. Relevant Factual Background

The Court previously outlined the factual allegations raised in the Complaint (ECF No. 1-1) in its July 12, 2024 Opinion. (*See* ECF No. 13 at 1-3). As such, the Court only addresses the allegations relevant to deciding the renewed motion to compel.

In August 2022, Defendant hired Plaintiff as a Customer Service Advocate. (*See* Defendant's Statement of Material Facts (ECF No. 41-2) ("DSOMF")[1] ¶ 1; Plaintiff's Response

---

[1] For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein. The Court sets forth only those material facts necessary to decide the motion. All facts are undisputed unless otherwise noted.

to Defendant's Statement of Material Facts (ECF No. 42-1) ("PRSOMF") ¶ 1).

On July 28, 2022, prior to beginning employment with Defendant, Plaintiff received an offer letter from Defendant, which stated that "[a]s a condition of your employment, you must agree to be bound by the terms of [an] Employment Arbitration Policy." (DSOMF ¶¶ 2-3; PRSOMF ¶¶ 2-3). The Offer Letter included a hyperlink to an arbitration agreement. (DSOMF ¶ 4; PRSOMF ¶ 4). Plaintiff did not click on the link to the arbitration policy. (PSOMF ¶ 4). The Offer Letter further explained that "[b]y accepting employment . . . you agree to be bound by the terms of the Arbitration Policy." (DSOMF ¶ 5; PRSOMF ¶ 5). Plaintiff electronically signed the arbitration agreement. (DSOMF ¶ 9; PRSOMF ¶ 9 ("It looks like my signature")).

Subsequently, in August 2022, Plaintiff accepted employment with Defendant. (DSOMF ¶ 6; PRSOMF ¶ 6).

In November 2024, Plaintiff testified at her deposition that she did not recall whether she signed the Arbitration Agreement. (DSOMF ¶ 10; PRSOMF ¶ 10).

## II. LEGAL STANDARD

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). The FAA "enables judicial enforcement of a contract to arbitrate after the court "hear[s] the parties" and is "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (citing § 4). Thus, when presented with a motion to compel arbitration, a district court must affirmatively answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement.

*Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *see also Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000) (holding that "when the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists"). When performing this inquiry, the Court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a court must order the parties to proceed with arbitration. 9 U.S.C. § 4. But "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"When a renewed motion to compel arbitration follows discovery regarding arbitrability, courts resolve the motion by applying the same standard applied to motions for summary judgment under Federal Rule of Civil Procedure 56(a)." *Barclays Servs., LLC v. Ademuwagun*, No. 23-20798, 2025 WL 2356184, at *3 (D.N.J. Aug. 14, 2025) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013)). Applying the summary judgment standard, a motion to compel arbitration should be granted as a matter of law only where "there is no genuine dispute of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 51 F.3d 283, 288-89, 289 n.10 (citing *Flintkote Co. v. Aviva PLC*, 769 f.3D 215, 219 (3d Cir. 2014)). The decision is effectively a "summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indent Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528

4

(3d Cir. 2009).

## III. DISCUSSION

In its renewed motion, Defendant argues the Court should compel arbitration because (i) the parties entered into a valid arbitration agreement; (ii) the parties "clearly and unmistakably delegated the question of arbitrability to the arbitrator[]"; and (iii) even if the Court were to address arbitrability, Plaintiff's claims fall within the scope of the Arbitration Agreement. (Br. at 9-15).[2] In opposition, Plaintiff contends the motion to compel must be denied because (i) the limited discovery conducted confirmed the Arbitration Agreement lacks mutual assent; (ii) the Arbitration Agreement is invalid because it fails to clearly indicate that Plaintiff was waiving her right to a jury trial; and (iii) an arbitrator lacks authority to determine the threshold issue of arbitrability. (Opp'n at 6-14). The Court addresses the parties' arguments in turn.

### A. The Arbitration Agreement is Valid and Enforceable

The FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles and therefore, an arbitration clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) (quoting 9 U.S.C. § 2). "An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (citation modified); *Kirleis*, 560 F.3d at 160; *see also Aliments Krispy Kernels*, 851 F.3d at 290 ("Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'") (quoting *Morgan*

---

[2] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

5

*v. Sanford Brown Inst.*, 225 N.J. 289, 137 A.3d 1168 (2016)). "A legally enforceable agreement requires 'a meeting of the minds[,]'" *id.* at 313 (citation modified) and must be supported by consideration. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir. 1999); *Sandvik*, 800 A.2d at 878-79. In the employment context, creating an employment relationship "is sufficient consideration to uphold an arbitration agreement contained in an employment application." *Sandvik*, 800 A.2d at 879.

Plaintiff argues the Arbitration Agreement is not valid because the Arbitration Agreement lacks mutual assent and failed to clearly indicate that she was waiving her right to seek relief in court. (*See* Opp'n at 6-13). The Court addresses each of Plaintiff's arguments in turn.

### i. The Arbitration Agreement was Mutually Assented To

"The question of whether the parties agreed to arbitrate is governed by state law principles regarding formation of contracts." *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 450 (D.N.J. 2017). "An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949 (2020) (citing *Atalese*, 99 A.3d at 313). "Thus, there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Id.* (cleaned up).

However, "[a]n arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." *Santana v. SmileDirectClub, LLC*, 292 A.3d 529, 533 (N.J. Super. Ct. App. Div. 2023) (citations omitted). "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." *Id.* "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" *Id.* (citing *Skuse*, 236 A.3d at 952).

Viewing the facts in the light most favorable to Plaintiff there is no genuine dispute of material fact that the arbitration agreement was mutually assented to. Plaintiff's arguments to the

6

contrary are unavailing. First, Plaintiff claims there was no mutual assent because she "did not recall" signing the agreement. (Pl.'s Br. at 5). Notwithstanding, Plaintiff's inability to recall signing the arbitration agreement is insufficient to generate a factual dispute. *See, e.g., Gomez v. Rent-A-Ctr., Inc.*, No. 18-1528, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) ("With respect to contractual disputes, federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event."); *Color St. LLC v. Audere, Inc.*, No. 22-2267, 2023 WL 7298467, at *7 (D.N.J. Nov. 3, 2023) ("[T]he Court is unconvinced by Plaintiffs' self-serving assertions that 'they do not recall' assenting to or otherwise agreeing to the terms of the [agreements]."); *Saadeh v. T-Mobile USA*, No. 21-12871, 2022 WL 193968, at *3 n.2 (D.N.J. Jan. 21, 2022) (compelling arbitration, notwithstanding plaintiff's claim that he did "not recall signing any of the contracts [defendant] provided"); *Magee v. Francesca's Holding Corp.*, No. 17-565, 2020 WL 3169518, at *9 (D.N.J. June 15, 2020) (compelling arbitration because "Plaintiffs' mere assertion that no Plaintiff remembers executing the arbitration agreements is insufficient to create a factual dispute").

Second, Plaintiff contends there was no mutual assent because she did not understand the arbitration agreement. (Pl.'s Br. at 11). Plaintiff further contends, *inter alia*:

> (1) had no knowledge as to the meaning of the word 'arbitration,'; (2) she did not click the link leading to Defendant's Employee Arbitration Policy, which was separate from her offer letter; (3) she did not recall reviewing the Employee Arbitration Policy; (4) she did not read the portion of the offer letter that states, 'By accepting employment with UnitedHealth Group, you agree to be bound by the terms of the arbitration policy.'; (5) she did not understand the documents she was signing; (6) no one discussed the arbitration agreement with Plaintiff . . . .

(Pl.'s Br. at 5).

However, Plaintiff's signature expressly represents and acknowledges that she read and

7

understood the arbitration agreement. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3d Cir. 2008) is analogous to the facts presented by Plaintiff here. The issue before the *Morales* Court, was "whether an arbitration clause in an employment agreement is enforceable where one party is ignorant of the language in which the agreement is written." *Morales*, 541 F.3d at 220. Appellee Morales, who filed a wrongful termination action, was a Spanish-speaking welder, who resided in St. Croix, United States Virgin Islands. *Id.* Morales asserted that his former employer, "needed [him]. It was an emergency. . .they needed to start work. . . ." *Id.* After passing a written exam, the company hired Morales and required that he attend a 2 1/2-hour orientation conducted entirely in English and to sign an employment agreement. *Id.* Five paragraphs of the employment agreement related to arbitration and covered nearly 8 pages of the agreement. *Id.* The company employee who conducted the orientation asked a "bilingual applicant who was also present at the orientation, and whom Morales knew, to explain to Morales what [the company employee] was saying and help him fill out the documents." *Id.* The bilingual employee asked to assist Morales stated he understood "about eighty-five percent of what is said and written in English." *Id.* The bilingual employee also stated that Morales did not ask him what he was signing and that he did not specifically explain the arbitration clause to Morales. *Id.* Morales was subsequently terminated by the company and brought a wrongful termination action, seeking relief under eight causes of action all covered by the Agreement's arbitration clause. *Id.* at 220-21. "The District Court determined that mutual assent to the arbitration clause did not exist and denied Sun's motion to stay the proceedings pending arbitration." *Id.* at 221.

On appeal, the Third Circuit reversed, and rejected Morales' argument that because he did not understand English, there was no mutual assent to the arbitration clause. *Id.* at 222. The *Morales* Court declined to create "an exception to the objective theory of contract formation where

8

a party is ignorant of the language in which a contract is written." *Id.* The Court explained that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." *Id.* (citations omitted). The Court noted Morales did not claim fraud and the Court further noted no allegation the misrepresented the contents of the agreement. *Id.* at 223. The Court concluded that:

> *It was Morales' obligation to ensure he understood the Agreement before signing.* Morales did not ask Hodge to translate the document word-for-word or ask to take the Agreement home and have it translated,...Morales did not even request a copy of the employment contract,... Moreover, *in the almost one year that Morales worked for Sun, he never questioned the terms of the Agreement. Morales' signature manifested his assent to the entire Agreement, and he is bound by the arbitration clause therein.*

*Id.* (emphasis added). The Court went on to conclude Morales entered into the agreement without duress. *Id.* at 224.

Indeed, Plaintiff, like all "contracting part[ies] ha[ve] the duty to learn and know the contents of a contract before [they] sign[ ] and deliver[ ] it." *Morales*, 541 F.3d at 222; *MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) ("It is the general rule that where a party affixes [her] signature to a written instrument,...a conclusive presumption arises that [she] read, understood and assented to its terms and [she] will not be heard to complain that [she] did not comprehend the effect of [her] act in signing." (quoting *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951) (alterations in original))).

Several Third Circuit and courts in this District have repeatedly affirmed the principles articulated in *Morales*. Morales, 541 F.3d at 222 ("Arbitration agreements in the employment context are not exempt from this principle.") (citation modified); *Argun v. Neiman Marcus Group*,

9

No. 19-14548, 2020 WL 1272247, at *10 (D.N.J. Mar. 16, 2020) (compelling arbitration and rejecting plaintiff's argument that "she did not understand the contract"); *Ricci v. Sears Holding Corp.*, No. 14-3136, 2015 WL 333312, at *5 (D.N.J. Jan. 23, 2015) (compelling arbitration and rejecting plaintiff's argument that "he didn't comprehend the rights he was relinquishing"); *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *6 (D.N.J. Mar. 31, 2014) ("It was Plaintiff's obligation to ensure that he understood the implications of the Agreement before signing it."); *Amano Cincinnati Inc. v. AMG Emple. Mgmt.*, No. 09-3821, 2009 WL 10741407, at *3 n.9 (D.N.J. Oct. 26, 2009) ("[A] party to a contract is not relieved of his obligations under the contract simply because he did not read it or understand it."); *Williams v. Wash. Mut. Bank*, No. 07-5559, 2008 WL 5427805, *3 (D.N.J. Dec. 20, 2008) ("Failing to read or understand the entire contents of an arbitration agreement will not release an employee from the agreement.").

The fact that Plaintiff signed the Agreement, coupled with her continuing to work for Defendant, is sufficient to show her intent to be bound by the contract. *See Byrne v. K12 Services Inc.*, No. 17-4311, 2017 WL 3397033, *2 (D.N.J. Aug. 8, 2017) (plaintiff signing the arbitration agreement and continuing to work for defendant for five years was sufficient "to show [plaintiff's] intent to be bound" (citing *Quigley v. KPMG Peat Marwick, L.L.P.*, 748 A.2d 405, 412–13 (N.J. Super. Ct. App. Div. 2000))).

### ii. The Arbitration Agreement Includes a Valid and Sufficient Waiver of the Right to File a Lawsuit

New Jersey courts have characterized arbitration agreements as "waiver-of-rights" provisions that, to be effective, require that the waiver of the right at issue to "be clearly and unmistakably established." *Atalese*, 99 A.3d at 314. Consequently, in order to be enforceable under New Jersey law an arbitration clause, "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve

the dispute." *Id.* at 315-16.

The Court next considers Plaintiff's argument that the Arbitration Agreement "does not contain sufficient waiver and explanatory language." (Opp'n at 10-13). Where a contract contains a waiver of rights—including in an arbitration clause—the waiver "must be clearly and unmistakably established." *Atalese*, 99 A.3d at 314 (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 670 (N.J. 2001)). New Jersey courts have upheld arbitration clauses that have explained in various ways "that arbitration is a waiver of the right to bring suit in a judicial forum." *Atalese*, 99 A.3d at 314. In the employment setting, "a waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003); *see also Atalese*, 99 A.3d at 316 (citation modified) (noting that in an employment setting, employees must "at least know that they have agreed to arbitrate all statutory claims arising out of the employment relationship or its termination").

The New Jersey Supreme Court has held that "no magical language is required to accomplish a waiver of rights in an arbitration agreement." *Morgan*, 137 A.3d at 1180. However, because an "average member of the public" may not know what arbitration is or how it works, the agreement must explain that arbitration is "a waiver of the right to bring suit in a judicial forum." *See Atalese*, 99 A.3d at 313-14. Further, the waiver language must be clear and unambiguous, and must inform the parties that there is "a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315.

The Court finds the Arbitration Agreement contains clear and unambiguous language regarding the arbitration process. There are several examples of language describing the arbitration process, such as:

- "Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy." (Smith Decl., ECF No. 41-7, Ex. D at 2).

- "All disputes covered by the Policy shall be decided by an arbitrator through arbitration and not by way of court or jury trial." (*Id.*)

- "[T]he arbitrator shall be an attorney experienced in employment law . . . or a retired judge." (*Id.* at 5).

- "[Defendant] and employee give up their respective rights to a court or jury trial." (*Id.* at 7).

"It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that [she] did not read it when [she] signed it, or did not know what it contained." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)); *see also Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded through one's business affairs does not excuse the ensuing collision."). Courts will only exclude a party's failure to comprehend a contract's terms in rare cases. *See, e.g., Morales*, 541 F.3d at 222 ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable.").

Plaintiff essentially asks this Court to make an exception to the usual rules of contract formation based on her assertion that she did not understand the terms of the Arbitration Agreement. However, Plaintiff electronically signed the Arbitration Agreement. As such, it was her obligation to ensure that she understood the implications of the Arbitration Agreement before signed it. *See, e.g., Morales*, 541 F.3d at 223. Accordingly, the Court finds Defendant has met its burden of demonstrating that the parties formed an agreement to arbitrate.

### B. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement

#### A. Arbitrability

Arbitrability considers whether the dispute falls within the scope of the arbitration clause. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (2019). "[Q]uestions of arbitrability . . . are presumed to be questions for judicial determination." *Quilloin v. Tenet HealthSys. Phila.*, 673 F.3d 221, 228 (3d Cir. 2012). However, the ultimate "question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Thus, under the FAA, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* "[P]arties may delegate threshold arbitrability questions to the arbitrator [as] long as the parties' agreement does so by 'clear and unmistakable' evidence," *Id.* at 69 (citation modified); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 & n.1 (2010); *MZM Constr. Co. v. N.J. Building Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020).

Where such delegation clauses are present, by "clear and unmistakable evidence[,]" the issue of arbitrability is properly determined by the arbitrator. *See Young*, 119 F.4th at 321; *Henry Schein*, 586 U.S. at 67-68 (2019) (quoting *Rent–A–Center*, 561 U.S. at 68-69 and citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)); *see also Blueprint Cap. Advisors, LLC v. Div. of Inv.*, 2023 WL 8866554, at *2 (3d Cir. Dec. 22, 2023); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018).

Importantly, however, even where a delegation clause exists, if the challenging party "resists arbitration on grounds that it never agreed to arbitrate at all" the court retains the "primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *See MZM Constr. Co.*, 974 F.3d at 401-02; *Sandvik*, 220

13

F.3d at 101, 106, 108 (expressly rejecting the argument that the severability doctrine applies when the threshold arbitrability issue is whether the parties mutually assented to the container contract); *Henry Schein*, 586 U.S. at 69 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Rent–A–Center*, 561 U.S. at 70 n.2 (drawing distinction between, on the one hand, questions about the validity or enforceability of an arbitration provision in an existing contract and, on the other hand, questions about whether an agreement "was ever concluded" in the first place); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (suggesting that questions about contract formation are different, and listed arbitrability issues that a "court must resolve" before referring a matter to arbitration, which "*always* include whether the [arbitration] clause was agreed to.") (emphasis added); *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir. 2003) ("[A] contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it."); *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "Indeed, it can hardly be said that contracting parties clearly and unmistakably agreed to have an arbitrator decide the existence of an arbitration agreement when one of the parties has put the existence of that very agreement in dispute." *MZM Constr. Co.*, 974 F.3d at 401 (citation omitted).[3] "It is thus inevitable that a court will need to decide questions about the parties' mutual assent to the container contract to satisfy itself that an arbitration agreement exists . . . ." *Id.* at 400.

---

[3] *See also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (rejecting assertion that Henry Schein establishes a categorical rule that, when an agreement includes a delegation clause, "a court possesses no power to decide the arbitrability issue" and noting "*Henry Schein* 'did not change . . . the rule that courts must first decide whether an arbitration agreement exists at all.'") (citing *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019)) and *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 n.3 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 856 (2020).

Defendant argues the parties "clearly and unmistakably delegated the question of arbitrability to the arbitrator[]" because the Arbitration Agreement incorporates the rules of the American Arbitration Association ("AAA") and "expressly delegates disputes over 'arbitrability' to the AAA arbitrator—not the Court." (Br. at 13-14). In opposition, Plaintiff argues an arbitrator lacks authority to determine the threshold issue of arbitrability because (i) the "Arbitration Agreement's brief mention of the AAA Rules and the extrinsic AAA Rules themselves . . . are insufficient to support any assertion that Plaintiff agreed to delegate the question of arbitrability"; (ii) the Arbitration Agreement does not "delegate the question of arbitrability" or "discuss an arbitrator's authority to answer questions of 'arbitrability,' i.e. the scope, enforceability, or breach of the Agreement"; and (iii) the arbitrator maintains "an inherent financial interest in enforcing the Agreement[.]" (Opp'n at 13-14).

The Court first considers Defendant's assertion that the Arbitration Agreement's incorporation of the rules of the AAA confirms the arbitrator has "the sole power to rule on arbitrability." (Br. at 13-14). The Arbitration Agreement explicitly provides, in pertinent part:

> The arbitration will be administered by the American Arbitration Association ("AAA") and, except as provided in this Policy, shall be in accordance with the then-current Employment Arbitration Rules of the AAA ("AAA Rules"). The AAA Rules are available via the Internet at www.adr.org/employment or by using a search engine such as www.google.com to search for "AAA Employment Arbitration Rules."

(Smith Decl., ECF No. 41-7, Ex. D at 3-4).

As another court in this District recently stated, "[c]ourts in this District and other jurisdictions have consistently concluded that an agreement's incorporation by reference of the AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate gateway issues." *Cabrera v. Verizon*, No. 24-7780, 2024 WL 4818091, at *4 (D.N.J. Nov. 18, 2024) (citing *Romanov v. Microsoft Corp.*, No. 21-3564, 2021 WL 3486938, at *5 (D.N.J. Aug. 9,

2021) (compelling arbitration where the plaintiff clicked acceptance of an onscreen agreement for use of the defendant's online gaming service, including an arbitration agreement that "expressly indicate[s] that the AAA Consumer Arbitration rules govern arbitration."); *Carrone v. UnitedHealth Group, Inc.*, No. 20-5138, 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020) (finding agreement's incorporation by reference of AAA rules granted arbitrator power to decide whether dispute was arbitrable, noting numerous courts have so held); *see also Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (holding incorporation of AAA Rules into the parties' agreement constitutes clear evidence arbitrability is delegated to an arbitrator); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Nguyen v. OKCoin USA Inc.*, No. 22-6022, 2023 WL 2095926, at *4 (N.D. Cal. Feb. 17, 2023) (granting motion to compel arbitration where arbitration agreement included reference to AAA Consumer Rules)).

Moreover, the Arbitration Agreement provides, in pertinent part:

> Covered claims also include any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability, waiver, or formation, or whether the Policy or any portion of the Policy is void or voidable, with the exception noted in the Class and Collective Actions Waivers section below.

(Smith Decl., ECF No. 41-7, Ex. D at 3). Additionally, the Arbitration Agreement provides: "All disputes covered by the Policy shall be decided by an arbitrator through arbitration and not by way of court or jury trial[]" and "[P]ursuant to the terms of this Policy, [Defendant] and employee are agreeing to arbitrate claims covered by this Policy." (*Id.* at 2, 7). The Court finds the clear language of the Arbitration Agreement provides the arbitrator is to decide any questions of arbitrability.

Finally, the Court rejects Plaintiff's argument that "unlike a judge, an arbitrator has an inherent financial interest in enforcing the Agreement; if an arbitrator invalidates it, then he is forfeiting tens of thousands of dollars in fees." (Opp'n at 14). Plaintiff fails to cite to any caselaw supporting this proposition. Notably, the Supreme Court has "'decline[d] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)); *see also Smith v. Am. Arbitration Ass'n*, 233 F.3d 502, 506 (7th Cir. 2000) ("The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered.") (citation modified); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award.") (citation modified).

The Court is mindful of the clear instruction that where a delegation clause exists by "clear and unmistakable evidence" the issue of arbitrability is properly determined by the arbitrator. *See, e.g., Blueprint*, 2023 WL 8866554, at *2. Notwithstanding, whereas here, Plaintiff challenges the attainment of mutual assent and disputes the "very existence of an agreement[,]" the Court must—as it did *supra*—first resolve the question of whether an arbitration agreement exists. *MZM Constr. Co.*, 974 F.3d at 402 ("[U]nder section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."); *Sandvik*, 220 F.3d at 109; *Granite Rock Co.*, 561 U.S. at 297.

Having found the parties entered into a valid Arbitration Agreement, the Court next

17

considers whether the claims at issue fall within the scope of the arbitration agreement. *See Century Indem. Co.*, 584 F.3d at 522. The Arbitration Agreement provides, in pertinent part: "[Defendant] and employee mutually consent to the resolution by arbitration of all claims and controversies, past, present, or future, that employee may have against [Defendant] or [Defendant] may have against employee, which arise out of or relate to employee's employment, application and selection for employment, and/or termination of employment." (Smith Decl., ECF No. 41-7, Ex. D at 2). The Arbitration Agreement identifies claims that are covered, which includes "claims for discrimination and harassment' retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance[.]" (*Id.*)

In this case, Plaintiff's allegations arise directly from her employment with Defendant. The Complaint raises claims of LAD discrimination and LAD retaliation, whereby Plaintiff was allegedly wrongfully discriminated and retaliated against because she was pregnant. (*See* ECF No. 1-1 at ¶¶ 18-32). Plaintiff's claims therefore fall squarely within the scope of the parties' Arbitration Agreement.

### B. The Action Will Be Stayed Pending Arbitration

Finally, Defendants request this action be stayed pending the outcome of arbitration. (Br. at 15-16). "Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (quoting 9 U.S.C. § 3) (alteration in original).[4] Accordingly, the Court stays the proceeding pending arbitration.

---

[4] Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to compel arbitration (ECF No. 41) is **GRANTED**, and the action is **STAYED** pending the arbitration's outcome. An appropriate Order accompanies this Opinion.

DATED: September 30, 2025

JULIEN XAVIER NEALS
United States District Judge

---

until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.